GOTHARD, Judge.
The State of Louisiana, through the Department of Social Services, appeals that portion of the judgment of the juvenile court ordering the State to maintain custody of L.J., an eighteen-year-old unwed mother in foster care. The juvenile court held that the long term plan for L.J., who is expecting her second child, is an independent living situation. With LJ.’s consent, the court denied the State’s motion to release L.J. from custody. We reverse.
Reports submitted to the court by the State prior to the hearing revealed that L.J. should receive her high school diploma shortly, has applied for public assistance and a medicaid card and plans to seek employment after the birth of her child. At the November 22, 1988 review hearing L.J. verified that report and stated she would continue living with her foster parents until she was able to find gainful employment.
The State presents two assignments of error for review. Initially, the State argues that the juvenile court erred in maintaining an adult in the State’s custody. Secondly, the State asserts that the juvenile court lacked jurisdiction over L.J. absent an adjudication of a neglected or dependent child or a child in need of care.
. L.J., who was born on September 15, 1970, was taken into the State’s temporary custody pursuant to an emergency order of the juvenile court on May 9,1972, when her mother was arrested in connection with the death of LJ.’s infant brother. L.J. and another sibling, K.J., were placed in foster care. A letter contained in the record dated May 17, 1972 alleges a history of neglect and indicates that it was the opinion of the State that the children’s mother would never be able to care for them properly. However, no formal petition was filed.
Subsequently, it became necessary to remove three other children from the same mother for reasons of neglect and malnutrition. On October 7, 1975 a petition was filed alleging those three siblings of L.J. to be neglected children. L.J. and K.J. were not included. Although there is no indication in the record of an adjudication as to any of the five children, all were placed in foster care.
The juvenile court reviewed L.J.’s status on January 5,1984 in a federally mandated permanency placement hearing and continued custody with the State in accordance with a long term foster care placement plan signed by all parties on December 13, 1983. Periodic review hearings held since that date have maintained the status quo.

*686
Jurisdiction

At the time L.J. was taken into temporary custody, the statutes conferring jurisdiction on the juvenile court were contained in LSA-R.S. 13:1570 et seq. Specifically, R.S. 13:1574 provided:
Whenever any person informs the court that a child is within the purview of R.S. 13:1561 through 13:1592, the court shall make a preliminary inquiry to determine whether the interests of the public or of the child require that further action be taken. Thereupon the court may make such informal adjustment as is practicable without a petition, or may authorize a petition to be filed by any person. The proceeding shall be entitled “The State of Louisiana in the interest of —, a child under seventeen years of age.”
The petition shall be verified and, if made by a probation officer or the district attorney, may be upon information and belief. It shall set forth plainly (1) the facts which bring the child in the purview of R.S. 13:1561 through 13:1592; (2) the name, age, and residence of the child; (3) the names and residences of his parents; (4)* of the person or persons having custody or care of the child and (5)* of the nearest known relative if no parent, custodian or other person having the care of the child can be found. If any of the facts herein required are not known by the petitioner the petitioner shall so state.
In the trial of a child under R.S. 13:1561 through R.S. 13:1592 it shall be the duty of the district attorney to conduct the prosecution.
R.S. 13:1575 provided:
After a petition shall have been filed and after such further investigation as the court may direct, unless the parties hereinafter named shall voluntarily appear, the court shall issue a summons reciting briefly the substance of the petition and requiring the person or persons who have the custody or care of the child to appear personally and if necessary bring the child before the court at a time and place stated. If the person so summoned shall be other than a parent or legal custodian of the child, then the parent or legal custodian or both shall also be notified in the manner provided by law for service of process in civil proceedings. Summons may be issued requiring the appearance of any other person whose presence, in the opinion of the judge, is necessary. Provided, where the parent, tutor, custodian or other person having care of the child is unknown or not within the jurisdiction of the Court, or cannot be located, service of the summons may be made directly on the child.
If it appears that the child is in such condition or surroundings that his welfare requires that immediate action be taken for his protection, the judge may order, that a probation officer or any other authorized agent of the court shall at once take the child into detention.
R.S. 13:1579.1 provided:
In the hearing of all cases under this Act, involving petitions of juvenile delinquency or neglect, all facts connected therewith and all surrounding circumstances, including the environment and history of the child, together with any character of evidence, including hearsay evidence and opinion evidence which the court, in its discretion, may deem proper, may be admissible, and the testimony of the probation officer assigned to the case shall be admissible.
R.S. 13:1580 provided in pertinent part:
If the court shall find that a child is within the purview of this act, it may adjudge the child to be a neglected child or delinquent child or a child who is otherwise in need of the protection of the State. The Court in its judgment may proceed as follows:
2. Assign the custody of the child to a public or private institution or agency authorized to care for children or to place them in family homes. In committing a child to a private institution or agency, the court shall select one that is approved by the State Department of Public Welfare. Where no institution, social agency or associa *687 tion approved by the State Department of Public Welfare for the care or placement of children is available to the court, the Court may commit the child to some other institution, social agency or association, which, in the judgment of the Court, is suitable for the care of such child. Said commitment may be for an indefinite period but in no case beyond the minority of the child.
The Supreme Court in State in the Interest of Toler, 262 La. 557, 263 So.2d 888 (La.1972) interpreted the meaning of this statutory scheme. The Toler court held:
Reading all of these sections together, it is clear to us that in such cases as this one the court, where the immediacy of the situation requires prompt action for the protection of the child, is authorized, without any formal petition, to make “an informal adjustment”, so far as is practicable. That is, the child may be taken at once into detention or protective custody.
He * * * * *
However, all of the other provisions contemplate an adversary proceeding like any other lawsuit, i.e., the necessity of the filing of a formal petition before the court can hear and decide the question of whether the minor is neglected or delinquent and issue a custody order for an indefinite period in accordance with R.S. 13:1579.1. Such a petition setting forth the ages of the child or children, the facts which bring it or them within the purview of R.S. 13:1561-1592, and so on, is the foundation of the proceeding to determine the issue of neglect or delinquency. And any proceeding conducted in its absence, as was the instant one, is null and can have no legal effect.
Toler, supra 263 So.2d at 891-2.
The current law set forth in the Code of Juvenile Procedure maintains the same ad-visarial process. It requires that a formal petition be filed, a contradictory hearing be held and an adjudication be made before a disposition is permissible. See LSA-C.J.P. arts 42 et seq. No such procedure was followed in the instant case.
The juvenile court has no jurisdiction to decide custody of children who have not been adjudicated children in need of care. Nor can the parties grant jurisdiction by their consent. State v. Bouvier, 344 So.2d 1168 (La.App. 4th Cir.1977).
LSA-C.J.P. art. 89F(2), which the juvenile court used as authority for its grant of custody, provides:
In cases of children in need of supervision or care, a judgment of disposition shall not remain in force after a child reaches his eighteenth birthday without the consent of the child and the concurrence of the court.
It is clear that this provision requires an adjudication and a disposition consistent with procedures set forth in the Code of Juvenile Procedure. We find nothing in C.J.P. art. 89F(2) which provides an exception to that rule.
We further find that, in view of the fact that L.J. was never adjudicated a neglected child under previous law or a child in need of care under existing law, the juvenile court is without jurisdiction to issue a dispositional order in this matter. Thus, the court’s order that the State maintain custody of L.J. is null and without legal effect.
Because we find the disposition null, we deem it unnecessary to review the correctness of the court’s grant of continued custody of a major to the State.
REVERSED.